**E-FILED on** 5/4/10

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| TODD R. FORD,<br><br>    Plaintiff,<br><br>    v.<br><br>ANTHONY MICHAEL CICOLETTI,<br><br>    Defendant. | No. C-09-00573 RMW<br><br>ORDER GRANTING DEFENDANT CICOLETTI'S MOTION TO DISMISS<br><br>**Re Docket No. 22** |

Defendant Anthony Cicoletti moves to dismiss the First Amended Complaint ("FAC") under Rules 12(b)(3), 12(b)(6), and 12(c) of the Federal Rules of Civil Procedure. Having considered the papers submitted by the parties and the arguments of counsel, and for good cause appearing for the reasons set forth below, the court grants the motion to dismiss.

**I. BACKGROUND**

Plaintiff Todd Ford and defendant Anthony Cicoletti were co-owners of Ford, Cicoletti & Company, which ceased operation around 1997. FAC ¶ 9. On November 29, 1999, the Internal Revenue Service ("IRS") made a tax assessment against Ford and Cicoletti, who were held jointly and severally liable under Internal Revenue Code ("IRC") section 6672 for the failure to collect and pay over certain taxes. *Id.* at ¶ 10. After penalties and interest, the amount owed was approximately

$189,627. *Id.* The California Employment Development Department ("EDD") also determined that Ford and Cicoletti were jointly and severally responsible for unsatisfied state employment, withholding and contributions taxes under California Unemployment Insurance Code Section 1735. FAC ¶13. The total amount of state taxes owed was $99,762. *Id.* at ¶14.

In June 2000, Ford paid one-half of the state taxes to the EDD. *Id.* at ¶ 15.

On July 28, 2000 Ford and Cicoletti entered into an Indemnification Agreement whereby Ford agreed to pay his one-half of the obligation to the EDD in a lump sum and Cicoletti agreed to pay his share of the obligation in $1,000 monthly payments. Cicoletti further agreed to indemnify and hold Ford harmless from any liability in excess of his one-half share. *Id.* at ¶ 14, Ex. A.

On February 2, 2001 Cicoletti filed for Chapter 7 bankruptcy. *Id.* at ¶18.

In November 2001, Ford paid an additional 25% of the state tax debt. *Id.* at ¶ 16.

In December 17, 2001, the bankruptcy court discharged Cicoletti and closed the Chapter 7 Bankruptcy case. *Id.* at ¶ 23.

On June 17, 2004, two and one-half years after the discharge order, the IRS filed a federal tax lien against Ford, attaching and encumbering all of his property. *Id.* at ¶11. One year later, Ford paid the entire balance assessed, plus all penalties and interest. *Id.* at ¶12. Ford also paid the remaining state taxes at that time, a total of three and one-half years after the discharge order. *Id.* at ¶ 25. At this point, Ford had fully paid the tax obligations that were the joint and several obligations of Ford and Cicoletti.

Nearly five more years passed before plaintiff filed this action on February 9, 2009 seeking to recover from defendant one-half of the federal and state taxes that plaintiff paid. The FAC sets forth three causes of action. The first asserts a federal statutory right of contribution pursuant to 26 U.S.C. § 6672(d) seeking to recover from Cicoletti one-half of the federal taxes. *Id.* at ¶¶ 26-29. The second asserts a state statutory right of contribution seeking to recover from Cicoletti one-half of the state taxes pursuant to California Civil Code § 1432. *Id.* at ¶¶ 30-34. The third asserts a claim for statutory subrogation under 11 U.S.C. § 509, pursuant to which Ford seeks to recover from Cicoletti one-half of the taxes paid. *Id.* at ¶¶ 35-38.

## II. ANALYSIS

### A. The Issues

Defendant Cicoletti moves to dismiss the FAC, or in the alternative for judgment on the pleadings,[1] on the basis that the debt upon which Ford seeks to collect was owed prior to the filing of the bankruptcy petition and was discharged by the discharge order such that Ford is precluded from pursuing such claim. Plaintiff disagrees, arguing that the tax debt was not discharged in bankruptcy and that plaintiff is, therefore, not precluded from recovering from Cicoletti the excess tax he paid over his one-half share. In addition, plaintiff contends that Cicoletti's subrogation and contribution obligations created by Ford's payment in excess of Ford's fifty percent share did not accrue until after Cicoletti obtained his discharge in bankruptcy and thus were not dischargeable debts.

### B. The Non-Dischargeability of a Tax Obligation Does Not Inure to the Benefit of One Who Pays that Tax Obligation on Behalf of the Debtor

All of a bankruptcy petitioner's pre-petition debts are discharged by a Chapter 7 discharge order, except for the debts listed in Section 523. 11 U.S.C. § 523; *In re Biggar*, 110 F.3d 685, 687 (9th Cir. 1997). Section 523(a) specifies that certain tax debts, such as those involved here, are not dischargeable. 11 U.S.C. § 523(a). Therefore, to the extent Cicoletti owed a tax debt to the government, his subsequent Chapter 7 bankruptcy and resulting discharge order did not discharge that debt, at least to the extent that at the time of the discharge the tax debt was owed to the government. However, the non-dischargeability exception set forth in section 523(a) does not inure to the benefit of, or transfer to, a third party who pays the debt of the debtor prior to the discharge. *See National Collection Agency v. Trahan*, 624 F.2d 906 (9th Cir. 1980) (third party who paid tax debt prior to discharge is not subrogated to the nondischargeable quality of the state's tax claim); *In re Smothers*, 60 B.R. 733 (Bankr. W. D. Ky. 1986); *but see Matter of Fields*, 501 F.2d 501, 504 (5th

---

[1] Cicoletti's motion for judgment on the pleadings under Rule 12(c) is denied as premature. The rule allows a party to move for judgment on the pleadings at any time after the pleadings are closed. Cicoletti has not yet filed an answer, however, and therefore the pleadings are not closed. Cicoletti's motion to dismiss under Rule 12(b)(3) for improper venue is also denied. Other than in the opening sentence of his brief, Cicoletti offers no argument why venue is improper. The First Amended Complaint alleges that Cicoletti resides in Santa Clara County. Thus, venue is proper in the Northern District of California. 28 U.S.C. §1391(b).

United States District Court
For the Northern District of California

1 Cir. 1991). To hold otherwise would conflict with the federal bankruptcy policy favoring the
2 discharge of debts. *Trahan*, 624 F.2d at 907.

3 Plaintiff's argument that *Trahan* is no longer good law and would not be followed if the
4 Ninth Circuit were to again address the issue is not persuasive. The court notes that the Ninth
5 Circuit itself favorably cited *Trahan* in *In re Hamada*, 291 F.3d 645 (9th Cir. 2002), a case relied
6 upon by plaintiff, with no indication that the decision was no longer good law in this circuit. *Id.* at
7 653.

### C. Ford's Pre-Discharge Payment in Excess of His Share is Barred

Ford paid one-half of Cicoletti's share of the state taxes in November of 2001, prior to the discharge order. Ford's claim to recover this amount from Cicoletti is thus barred by the discharge order unless plaintiff is correct that the debt is non-dischargeable because it is a tax debt. As noted above, however, the Ninth Circuit's decision in *Trahan* bars this argument. Accordingly, Ford's claim against Cicoletti based upon his payment of state taxes November 200l on Cicoletti's behalf for which he was to be held harmless by Cicoletti is barred.

### D. Ford's Payments Made After Cicoletti's Discharge Are Considered Pre-Petition Obligations and Therefore Discharged

If Ford was a creditor of Cicoletti's bankruptcy estate for his claims for payment of more than his fair share of the taxes, then his claims are barred by Cicoletti's bankruptcy discharge. The trigger of the right to sue for contribution under both federal and state law is payment in excess of one's fair share. IRC section 6672(d) provides that "each person who paid such penalty shall be entitled to recover from other persons who are liable for such penalty an amount equal to the excess of the amount *paid* by such person over such person's proportionate share." (Emphasis added). California Civil Code section 1432 provides that "a party to a joint, or joint and several obligation, who satisfies more than his share of the claim against all, may require a proportionate contribution from all the parties joined with him." A party acquires a right of contribution as soon as he pays more than his share, but not until then. *Jackson v. Lacy*, 37 Cal. App. 2d 551, 559 (1940). Therefore, if the dates on which Ford could have been instituted suit are deemed to be the dates on which Ford first had assertable bankruptcy claims for the debts of Cicoletti, then the debts would be post-discharge debts and would not be barred by Cicoletti's discharge. However, the Bankruptcy Code 's

ORDER GRANTING DEFENDANT CICOLETTI'S MOTION TO DISMISS —No. C-09-00573 RMW
TER                                                4

definitions of "claim" and "debt" are much broader and do not directly correspond to when an enforceable cause of action accrues.

The Bankruptcy Code defines a "debt" as "a liability on a claim." 11 U.S.C. §101(12). It defines "claim" as "a right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." 11 U.S.C. §101(5)(A). "The Code includes contingent and unmatured rights to payment within the definition of claim. By providing for the broadest definition of claim Congress intended to ensure that all legal obligations of the debtor, no matter how remote or contingent, will be able to be dealt with in the bankruptcy case." *In re Hassanally*, 208 B.R. 46, 50 (B.A.P. 9th Cir. 1997) (internal quotation marks deleted). In determining that a debt was a pre-petition contingent claim which was discharged in bankruptcy, the court explained:

> In this case, the bankruptcy court's legal conclusion was that the debt was not discharged to the extent it was a post-petition cause of action under state law. Under the "right to payment" or "accrued state law claim" test, which the bankruptcy court applied, a claim does not arise in bankruptcy until an action has accrued under relevant substantive nonbankruptcy law. . . . The Ninth Circuit and other circuits have rejected this test, under a variety of fact patterns, on the grounds that it interprets the term claim more narrowly than Congress intended. . . . [T]he right to payment or accrued state law claim test is no longer viable in the Ninth Circuit. We hold that the bankruptcy court erred as a matter of law by applying this test to grant summary judgment to the bank.
>
> * * *
>
> [T]his Court concludes that where debtor committed the act or omission complained of prior to filing bankruptcy, and the claimant has a relationship to the act or omission at the time, such as being the patient or a contracting party, the claim arose at that point in time even if there has been no indication or manifestation of the consequences of the act or omission. It is within the fair contemplation of parties entering into a contract that the other party may breach it, or have made misrepresentations to induce the making of the contract. Thus, a contingent claim arises at that point in time, although it may never mature. The policies of the Bankruptcy Code are best served by an inclusive interpretation of "claim", as 11 U.S.C. § 101(5) contemplates.

*Id.* at 53.

*Hassanally* held that a bank's claim against a contractor for negligent construction was barred by the contractor's discharge even though the bank had no reason to know of the deficient construction until after the bankruptcy. In the present case, Ford did not necessarily know that Cicoletti was going to file bankruptcy proceedings or that he, Ford, was going to be required to pay

Cicoletti's share of the taxes until after Cicoletti had been discharged. However, Ford and Cicoletti incurred joint and several tax liability to the taxing authorities prior to Cicoletti's bankruptcy and, based upon the parties' presumed knowledge of the tax laws and their entry into the indemnity agreement, the possibility that one of them would fail to pay his taxes was fairly within their contemplation.

*In re Psychotherapy and Counseling Center, Inc.*, 195 B.R. 536, 542-3 (Bankr. D.D.C. 1996), is also instructive. There, the debtor and the debtor's president co-signed a note. The Bankruptcy Court determined that, for bankruptcy purposes, the president's claim against the debtor arose when the president co-signed the note and not at the later time when the president paid out more than his fair share on the note. The court explained that a claim arises for bankruptcy purposes when the contingent liability is established, specifically, when the joint obligation arose rather than when the co-obligor's claim for contribution ripened or matured into a claim that is actionable in court. The same analysis applies here. Ford's claims against Cicoletti were contingent claims arising when the tax debts arose and Ford and Cicoletti were jointly and severally liable to the applicable taxing authorities. At the time of Cicoletti's bankruptcy, Ford possessed a contingent claim that would ripen into an actionable claim against Cicoletti in the event that Ford paid more than his fair share of the debt. Ford's claims against Cicoletti arose for bankruptcy purposes when the tax debt arose, not when Ford later paid more than his fair share of the debts.

Thus, the court concludes that Ford had a contingent contribution claim under section 101(5)(A) when he and Cicoletti incurred the joint and several tax liability for the state and federal taxes and that Ford was a creditor at that time under section 101(1)(A). As such, Ford's claims were discharged in bankruptcy and Ford cannot pursue them now. This conclusion is supported by the policy underlying the Bankruptcy Code of ensuring that all legal obligations of a debtor, no matter how remote or contingent, can be dealt with in the bankruptcy case.

### E. Plaintiff Has No Subrogation Claim As He Is a Primary Obligor

Plaintiff's third cause of action is for subrogation under 11 U.S.C. §509. Through it, plaintiff seeks the same relief as sought in the first two causes of action, specifically to recover from Cicoletti

the amount of taxes Ford paid that were in excess of his proportionate share. Like the contribution claims, however, the subrogation claim is a pre-petition claim that is barred by Cicoletti's discharge.

The parties nevertheless devote a substantial amount of their briefing and argument to whether or not Ford may assert a claim for subrogation when he and defendant are jointly and severally liable on the debt. The court need not address these arguments in detail. The cases cited by the parties recognize a split in authority on whether the principles of equitable subrogation are applied to a claim of statutory subrogation under Section 509. *See In re Photo Mechanical Serv. Inc.*, 179 B.R. 604, 618-19 (Bankr. D. Minn. 1995) (discussing divergent case law); *In re Fiesole Trad'g Corp.*, 315 B.R. 198, 203-04 (Bankr. D. Mass. 2004) (same). The Ninth Circuit treats equitable subrogation and statutory subrogation as separate and distinct from each other. *See In re Hamada*, 291 F.3d 645 (9th Cir. 2002) (noting distinction between equitable subrogation under the common law and statutory subrogation, and treating each claim separately). But even so, plaintiff's claim for statutory subrogation still fails.

Section 509(a) provides that "[e]xcept as provided in subsection (b) or (c) of this section, an entity that is liable with the debtor on, or that has secured, a claim of a creditor against the debtor, and that pays such claim, is subrogated to the rights of such creditor to the extent of such payment." Section 509(b)(2), however, creates an exception to this statutory right, stating that "[s]uch entity is not subrogated to the rights of such creditor to the extent that . . . as between the debtor and such entity, such entity received the consideration for the claim held by such creditor." 11 U.S.C. § 509(b)(2). This exception for one who "received the consideration for the claim" may not be readily apparent in the context of the payment of a tax debt, but case law has held that when an entity pays a jointly owed tax debt, it cannot seek contribution under Section 509 because it has received consideration in the form of satisfaction of personal liability for the taxes paid. *In re Davis*, 145 B.R. 499, 502 (Bankr. W.D. Penn. 1992). *In re Cooper*, 83 B.R. 543 (Bankr. C.D. Ill. 1988), relied on by plaintiff, is distinguishable. *Cooper* allowed the ex-wife of debtor who paid the couple's joint and several income tax liability to be subrogated to the IRS' claim, but in that case, the tax liability had been apportioned to the debtor-husband in the divorce proceedings, and as between the parties, he was solely responsible for the tax debt. 83 B.R. at 547. In the present case, by

1 contrast, the parties are jointly and severally liable for the debt, and at best have an agreement
2 between themselves with respect to state taxes that each will only be liable for one-half of the debt.

3      The court is also persuaded by the Eleventh Circuit's decision in *Fibreboard Corp. v. Celotex*
4 *Corp. (In re Celotex Corp.)*, 472 F.3d 1318 (11th Cir. 2006), a case rejecting the ability of a claimant
5 to pursue a subrogation claim for payment of the parties' joint and several liability. Fibreboard and
6 Celotex were jointly and severally liable on judgments in several asbestos personal injury cases.
7 Fibreboard paid the judgments and then asserted a statutory subrogation claim against Celotex under
8 Section 509. After reviewing the case law, the Eleventh Circuit affirmed the grant of summary
9 judgment, concluding that Section 509(b)(2) "precludes subrogation claims under the Bankruptcy
10 Code by those who receive consideration for payment on the claim. . . . In other words, those who
11 are primarily liable for the entire debt and therefore receive the consideration for payment of the
12 whole amount of the claim, may not bring subrogation claims to recover the payment." *Id.* at 1323.

13      Ford and Cicoletti were jointly and severally liable for the tax debts owed by Ford, Cicoletti
14 & Company. Ford's payment of a joint and several debt does not give rise to a claim for subrogation
15 under Section 509. Additionally, even if Ford could otherwise bring a subrogation claim against
16 Cicoletti, as noted above, the claim arose for bankruptcy purposes before the order of discharge and
17 Ford is therefore barred from asserting it.

### III. ORDER

19 For the reasons stated above, defendant's motion to dismiss is granted.

21 DATED:    5/4/10

*Ronald M. Whyte*
RONALD M. WHYTE
United States District Judge

**Notice of this document has been electronically sent to:**

**Counsel for Plaintiff:**
Christopher K. Karic        ckk@robinsonwood.com
Cyndi J. Claxton            cjc@robinsonwood.com
Michael St. James           ecf@stjames-law.com

**Counsel for Defendants:**
Kathryn S. Diemer           kdiemer@diemerwhitman.com

Counsel are responsible for distributing copies of this document to co-counsel that have not registered for e-filing under the court's CM/ECF program.

**Dated:** 5/4/10                                        TER
                                                **Chambers of Judge Whyte**